**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OLE K. NILSSEN and | ) | |
| GEO FOUNDATION, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 03-cv-2962 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| OSRAM SYLVANIA, INC. and | ) | |
| LEDVANCE LLC as its | ) | |
| successor-in-interest, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| CFL TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Intervenor. | ) | |
| ———————————————— | ) | |

**MEMORANDUM OPINION AND ORDER**

On September 27, 2005, the Honorable Amy J. St. Eve entered a minute order dismissing this patent infringement case. Now, 16 years later, Defendants have returned. They ask this Court to interpret Judge St. Eve's minute order, divine her intent, and declare that the Court dismissed all claims with prejudice, even though the order itself was silent on that issue.

That's an unusual request. Parties typically do not return to the courthouse more than a decade after they left. But here, the meaning of Judge St. Eve's dismissal order is important to a later wave of litigation between the parties (or their assignees) in federal court in Delaware. The nature of the dismissal here determines whether Defendants can be sued again over there.

If Judge St. Eve dismissed the claims with prejudice, then a preclusion doctrine applies, and the Osram companies can't be sued again for infringement. But if Judge St. Eve dismissed the claims without prejudice, then bringing a new infringement claim against Osram is fair game.

So, Defendants have come back to this District, requesting confirmation that the dismissal in 2005 was with prejudice. They ask this Court to modify a 16-year-old dismissal order, either because Judge St. Eve made a mistake under Rule 60(a), or because there are extraordinary circumstances under Rule 60(b)(6).

For the reasons that follow, the motion is denied.

## Background

This is an exceptionally old case patent infringement case. Plaintiffs filed this lawsuit in 2003. It left the courthouse – but not for good – in 2005.

For present purposes, the key ruling was a minute order from September 27, 2005 dismissing the case. That's a 16-year-old minute order. If the dismissal order were a person, it would be old enough to drive. When Judge St. Eve entered that minute order, the judiciary did not have a Chief Justice. (The Senate confirmed then-Judge John Roberts a few days later.) Only two of the current nine Justices were on the Supreme Court. Tom Brady had won only three Super Bowls.

Judge St. Eve entered that minute order more than a decade before this Court took the bench. By this Court's count, Judge St. Eve has issued far more than 1,000 opinions between September 27, 2005 and today (according to Westlaw, so it's an undercount). And in the intervening years, Judge St. Eve was elevated to the Seventh Circuit.

Taking a step back, and looking at the big picture, the dispute involves three lawsuits filed in two districts over a span of two decades.

The dispute involves inventions by Plaintiff Ole Nilssen, a prolific inventor and equally prolific litigator. *See* Cplt., at ¶¶ 13, 15 (Dckt. No. 1). "Nilssen is an inventor – a litigious inventor, as a check of LEXIS or Westlaw will reveal." *See Nilssen v. Motorola, Inc.*, 255 F.3d

2

410, 412 (7th Cir. 2001). According to the Seventh Circuit, Nilssen has a history of overplaying his hand. "He has been unsuccessful in all published decisions and has been threatened with sanctions for making frivolous claims . . . ." *Id.*

Nilssen worked in the field of electronics and electronic ballasts, which regulate the current in the tube in fluorescent lamps. *See* Cplt., at ¶ 13 (Dckt. No. 1); *see also Nilssen*, 255 F.3d at 412 (explaining electronic ballasts). Nilssen invented and owned a number of patents, including patent number 5,757,140 (the '140 patent) and patent number 6,172,464 (the '464 patent). *See* Cplt., at ¶ 14. In 2000, he gave an exclusive license to Plaintiff Geo Foundation, his not-for-profit based in the Cayman Islands. *Id.* at ¶¶ 5, 15.

Defendant Osram Sylvania is in the light business. It makes and sells electronic ballasts and compact fluorescent lights. *Id.* at ¶ 8. Osram Sylvania Products Inc. is a subsidiary. *Id.* at ¶¶ 6–7.

In 2000, Nilssen and Geo Foundation sued Osram Sylvania and Osram Sylvania Products in federal court in Delaware for infringing on 26 patents. That's *Osram I*. The case was eventually transferred to this district and assigned to Judge Darrah. *See Nilssen v. Osram Sylvania, Inc.*, Case No. 01-cv-3585, 2007 WL 257711, at *1 (N.D. Ill. 2007).

During discovery, Plaintiffs submitted a claim chart that withdrew some patents and attempted to add other patents not listed in the complaint, including the '140 and '464 patents. *See* Pls.' Resp. to Defs.' Mtn. for Attorneys' Fees, at 9 (Dckt. No. 61). Defendants objected to the inclusion of additional patents, and Judge Darrah refused to give Nilssen leave to add them to the litigation. *Id.*

That roadblock led to a second lawsuit in this district. In May 2003, Plaintiffs opened a second front and filed the case at hand – *Osram II* – about the additional patents. *Id.* In *Osram*

3

*II*, Nilssen and Geo Foundation alleged that Osram Sylvania and Osram Sylvania Products had infringed on 16 patents.  *See* Cplt., at ¶¶ 14, 17 (Dckt. No. 1).  The list of patents at issue included the '140 and '464 patents.  *Id.*  Judge St. Eve presided over *Osram II*.

Before long, the parties whittled down the case.  By November 2003, the parties' joint claim construction chart reduced the number of patents at issue from 16 to 2.  That is, Plaintiffs dropped 14 of the 16 patents, including both the '140 patent and the '464 patent.  *See* Parties' Joint Claim Construction Chart (Dckt. No. 20) (listing only two patents); *see also* 3/2/2006 Order, at 1 (Dckt. No. 71) ("On September 25, 2003, Plaintiffs provided Defendants with an infringement claim chart, which reduced the number of patents in issue from sixteen to two."); Nilssen's Submission of a Revision to the Parties' Prior Joint Claim Construction Chart, at 1–2 (Dckt. No. 45) (confirming that there were only "two patents-in-suit" as of November 19, 2003).  Two patents remained in the case:  the '827 patent and the '787 patent.

The parties discussed settlement, and apparently made substantial progress.  At a status hearing in April 2004, Plaintiffs orally moved to voluntarily dismiss *Osram II* – with leave to refile by June 25, 2004 – while they discussed settlement.  Plaintiffs' counsel expressly requested a dismissal without prejudice:

| | |
|---|---|
| Plaintiffs' Counsel: | So, what we'd like to do and what Nilssen has agreed to do – and what we've proposed to Osram just this morning – is that we, in this case, stipulate to a voluntary dismissal of this action. |
| The Court: | *Without prejudice?* |
| Plaintiffs' Counsel: | *Without prejudice, correct.* |
| Defense Counsel: | And, your Honor – |
| The Court: | Mr. Pasternak? |

| | |
|---|---|
| Defense Counsel: | Your Honor, I think that sounds like a very good plan. I had understood we were going to come in and try to get the case stayed. I am going to advise the client to agree to this, but I'd like to check with them this morning just to make sure they have no problem, if you're inclined to do it. |
| The Court: | And what would the terms of the voluntary dismissal be? What are you proposing? |
| Plaintiffs' Counsel: | It would be – |
| The Court: | With leave to reinstate within a certain period of time, or – |
| Plaintiffs' Counsel: | Exactly. It would give us until some date – say, October 15th of this year – to refile without any prejudice. |

*See* 4/14/2004 Tr., at 3:1-22 (Dckt. No. 79-5) (emphasis added).

The next day, the Court presided over a follow-up hearing. Defense counsel confirmed that Defendants had agreed to the voluntary dismissal. *See* 4/15/2004 Tr., at 2:7-13 (Dckt. No. 79-6).

Based on that agreement, Judge St. Eve granted the oral motion for voluntary dismissal, with leave to reinstate by June 25, 2004. *Id.* at 2:24 – 3:1; *see also* 4/15/2004 Order (Dckt. No. 28) ("Plaintiffs' oral motion for voluntary dismissal with leave to reinstate by 6/25/04 is granted. Terminating case."). So, in April 2004, *Osram II* was closed.

But the case didn't quite leave the building. Plaintiffs filed motion after motion, and Judge St. Eve granted extension after extension, pushing the deadline to reinstate the case. *See* 6/23/2004 Order (Dckt. No. 30); 7/29/2004 Order (Dckt. No. 31); 8/13/2004 Order (Dckt. No. 32); 9/9/2004 Order (Dckt. No. 33); 9/29/2004 (Dckt. No. 34); 10/20/2004 (Dckt. No. 35); 11/17/2004 (Dckt. No. 36); 1/6/2005 (Dckt. No. 37); 3/4/2005 (Dckt. No. 38); 4/21/2005 (Dckt. No. 39); 6/16/2005 (Dckt. No. 41); 7/8/2005 (Dckt. No. 42).

After a dozen extensions spanning more than a year, Judge St. Eve called a status hearing in July 2005. *See* 7/8/2005 Order (Dckt. No. 42). Right away, the Court cut to the chase: "What is going on?" *See* 7/21/2005 Tr., at 2:12 (Dckt. No. 79-7).

Counsel for Nilssen and Geo Foundation reported that the parties had come "close" to a settlement, but didn't quite get there, so it was "time to get the litigation back on track." *Id.* at 2:19-21. Plaintiffs' counsel announced that they planned to pursue a claim about only one patent: "Well, your Honor, first I'd like to note that Mr. Nilssen is going to be proceeding with just one patent against one product line." *Id.* at 3:15-17.

Based on that revelation, Judge St. Eve reinstated the case and directed the parties to submit a revised joint claim construction chart. *Id.* at 5:24 – 6:1. The Court also set a schedule for the parties to file claim construction briefs, and to complete discovery. *See* 7/21/2005 Order (Dckt. No. 43).

So by July 2005, this case was open again. The parties filed proposed claim construction charts by the end of August 2005. The charts showed that only one patent was at issue in the case: the '787 patent, meaning patent number 5,049,787. *See* Nilssen's Submission of a Revision to the Parties' Prior Joint Claim Construction Chart, at 1–2 (Dckt. No. 45) ("As of November 19, 2003 . . . there were two patents-in-suit, namely U.S. Patent Nos. 6,472,827 ("827 patent') and 5,049,787 ("787 patent'). Since that time, Nilssen has withdrawn the '827 patent from this action."); Osram's Proposed Claim Construction Chart, at 2 (Dckt. No. 44) ("Given Nilssen's decision to withdraw 15 patents, only claims 17, 19 and 20 of U.S. Patent No. 5,049,787 remain at issue in this case.").

The case didn't stay open for long. On September 20, 2005, Nilssen's counsel sent a letter to Judge St. Eve, letting the Court know that it was withdrawing its last remaining

infringement claim.  "This is to advise Your Honor that Nilssen is withdrawing his assertions

that Osram infringes the sole patent remaining in issue in this matter, namely, U.S. Patent No.

5,049,787 (the ''787 patent')."  *See* 9/20/2005 Letter (Dckt. No. 79-8).

The letter noted the ongoing litigation between the parties about two other patents in

*Osram I* in front of Judge Darrah.  *Id.*  Nilssen revealed that it was dropping the request to

consolidate the two cases because it was dropping *Osram II* and thus dropping the claim about

the '787 patent.  *Id.* ("The Osram product line accused of infringement in the instant case is also

accused of infringing two other patents in the related *Osram I* case pending before Judge Darrah

(no. 01 C 3583).  Nilssen believes that withdrawing his allegations of infringement under the

'787 patent will more effectively conserve judicial resources and reduce the parties' costs than

would consolidation of this case with the *Osram I* case; Nilssen's motion for consolidation

(which has been pending before Judge Darrah) is now withdrawn.").

The final paragraph of the letter addressed dismissal.  The letter simply stated that the

parties anticipated a joint submission to dismiss the case (meaning *Osram II*), presumably

through a stipulation of dismissal or an agreed motion under Rule 41.  "Nilssen intends to submit

to Osram an appropriate statement of non-liability.  Nilssen also will confer with Osram in

regards to preparing a joint dismissal of this action."  *Id.*

The letter left it at that.  It ended by foreshadowing a "joint dismissal," without saying

anything about the parameters of a dismissal.  *Id.*  The letter did not suggest whether the

dismissal should be with or without prejudice.

On September 27, 2005, Judge St. Eve entered the dismissal order, meaning the order that

is at the heart of the motion currently before this Court.  Based on the letter, the Court simply

closed the case.  The Court ruled as follows:  "Pursuant to letter received 9/20/2005, case is

dismissed. This Court shall retain jurisdiction. Status hearing set for 11/2/2005 is stricken. Mailed notice." *See* 9/27/2005 Order (Dckt. No. 49).

The minute order did not reveal whether the dismissal was with or without prejudice. On its face, there was no indication in the minute order that the dismissal was with prejudice. *See* Fed. R. Civ. P. 41(b). And no one had asked the Court to dismiss anything with prejudice, either.

The parties apparently were satisfied with the dismissal order. None of the parties requested clarification of the Court's dismissal order. The parties also did not follow-up by filing anything related to a dismissal (presumably because Judge St. Eve had beaten them to the punch). That is, the parties did not file a stipulation of dismissal under Rule 41(a)(1)(A)(ii), or a motion for dismissal under Rule 41(a)(2).

A few weeks later, Defendants filed a motion for attorneys' fees, based on the notion that Nilssen was overly litigious and had abused the judicial process in multiple ways. *See* Defs.' Mtn. (Dckt. No. 52). The accompanying brief put a coat of gloss on the letter from Nilssen's counsel to Judge St. Eve on September 20, 2005. As Defendants read it, Plaintiffs' counsel had proposed a dismissal with prejudice in that letter. *See* Defs.' Mem., at 12 (Dckt. No. 52-2) ("At the close of business the next day – September 20, 2005 – Nilssen's counsel sent this Court a letter stating that he intended to dismiss this entire action with prejudice.").

On March 2, 2006, six months after the dismissal, Judge St. Eve issued two orders, denying the motion for attorneys' fees but granting the motion for costs. *See* 3/2/2006 Order (Dckt. No. 71); 3/2/2006 Order (Dckt. No. 72).

The order about the motion for attorneys' fees did not address whether the September 2005 dismissal was with prejudice. *See* 3/2/2006 Order (Dckt. No. 71). But the order about

costs noted that the dismissal was "with prejudice." *See* 3/2/2006 Order, at 1 (Dckt. No. 72). "On September 27, 2005, the Court dismissed with prejudice the case Plaintiffs Ole K. Nilssen and Geo Foundation . . . brought against Defendants . . . ." *Id.* And again: "The Court dismissed this case with prejudice pursuant to Plaintiffs' request for a voluntary dismissal." *Id.*

The case then went dormant for 15 years, until (much like a cicada) it sprang back to life in 2021.

In August 2021, Defendants filed the motion that is currently before this Court. *See* Defs.' Mtn. (Dckt. No. 77). Defendants asked that the Court modify the order dated September 27, 2005, to reflect that the dismissal was with prejudice as to all 16 originally asserted patents – including the '140 and '464 patents. *See* Defs.' Mem., at 2 (Dckt. No. 78).

Why seek modification so many years later? The explanation involves a third wave of litigation – *Osram III*.

In 2018, CFL Technologies purchased a number of Nilssen's patents, including patent numbers '140 and '464. *See* CFL's Mtn. to Intervene, at ¶ 2 (Dckt. No. 84). CFL then sued Osram Sylvania and LEDVANCE (another wholly owned subsidiary of Osram Sylvania) for patent infringement in federal court in the District of Delaware. *See CFL Techs. LLC v. Osram Sylvania Inc.*, Case No. 18-cv-01445-RGA, 2019 WL 2995815, at *1 (D. Del. 2019). LEDVANCE acquired Osram Sylvania Products' fluorescent lamps business in 2016, so LEDVANCE took the place of Osram Sylvania Products. *See* Defs.' Mem., at 1 n.1 (Dckt. No. 78).

In *Osram III* (again, pending in federal court in Delaware), CFL claimed that Osram had infringed on five patents, including the '140 and '464 patents. *See CFL Techs.*, 2019 WL 2995815 at *1. Osram, in turn, defended the claims under the *Kessler* doctrine.

The *Kessler* doctrine extends the claim preclusive effect of a judgment in favor of a patent infringement defendant. Basically, the patent owner cannot bring new infringement claims under the same patent against the same or "essentially the same" products. *See In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1375 (Fed. Cir. 2020). Importantly, the doctrine applies to situations where there is a "stipulated dismissal with prejudice." *Id.* at 1379.

The assertion of that defense put Judge St. Eve's dismissal order back on center stage. If Judge St. Eve's dismissal applies to all originally asserted patents, and if the dismissal was with prejudice, then claim preclusion under the *Kessler* doctrine applies, and CFL's claims are sunk.

The parties ultimately filed motions for summary judgment in *Osram III*, and one of the issues involved the *Kessler* doctrine and Judge St. Eve's dismissal order. Apparently, the defendant in *Osram III* offered "three unpublished decisions from three district courts," where courts had winnowed out patent claims by Nilssen over the years. *See CFL Techs. LLC v. General Electric Co.*, Case Nos. 18-cv-01444-RGA & 18-cv-01445-RGA, 2021 WL 1105335, at *8 (D. Del. 2021). One of the decisions was Judge St. Eve's dismissal order, and the parties "debate[d] whether this was done with or without prejudice." *Id.* at *1.

The federal court in Delaware in *Osram III* denied Defendants' motion for summary judgment on the '140 and '464 patents. *Id.* at *8. The court concluded that it was too murky whether the dismissal was with prejudice. The court ruled: "Osram admits the record as to how the '140 and '464 patents were dismissed from the case is 'a little bit muddy' and the law on whether the patents withdrawn early from a case are dismissed with or without prejudice 'is not entirely clear.' I do not think Osram has not [sic] met its burden of proof that the '140 and '464 patents were subject to a dismissal with prejudice. Therefore, the *Kessler* doctrine cannot be

applied to bar Plaintiff's infringement allegations as to the '140 and '464 patents." *Id.* (citations to a transcript omitted).

In response to that ruling, Osram returned to the Northern District of Illinois, and filed the motion at hand. Osram seeks an order modifying the Court's dismissal order under Rule 60(a) or Rule 60(b)(6). *See* Defs.' Mtn. (Dckt. No. 77). Osram basically wants an order confirming that the dismissal 16 years ago was with prejudice. And more broadly, Osram wants a ruling that the claims involving all patents – including the 16 patents originally alleged in the case – were dismissed with prejudice.

CFL Technologies, the new owner of the patents, intervened and opposed Osram's motion. *See* CFL's Mtn. to Intervene (Dckt. No. 84).

### Discussion

Defendants ask this Court to modify its 2005 dismissal order under Rule 60(a) or Rule 60(b)(6) to clarify that the Court dismissed all claims with prejudice. *See* Defs.' Mem., at 9 (Dckt. No. 78). They basically argue that the September 27, 2005 dismissal was with prejudice, not without prejudice. And they contend that it applied all 16 patents that were originally in the case, even though only 1 of the 16 patents was still in the case in 2005.

There is a big difference between a dismissal without prejudice and a dismissal with prejudice, as their names reveal. A dismissal without prejudice "renders the proceedings a nullity and leaves the parties as if the action had never been brought." *See* 8 James Wm. Moore *et al.*, Moore's Federal Practice § 41.40[9][b] (3d ed. 2021); *see also Robinson v. Willow Glen Acad.*, 895 F.2d 1168, 1169 (7th Cir. 1990) ("However, when, as here, a case is voluntarily dismissed pursuant to Rule 41(a)(2), the Federal Rules of Civil Procedure control and the action is treated as if it had never been filed."). A dismissal without prejudice effectively erases the

dismissed action, and typically "is not a final order that is appealable." *Doe v. Village of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2367 (4th ed. 2021).

A dismissal without prejudice "does not have res judicata or collateral estoppel effect on later proceedings." *See* 8 James Wm. Moore *et al.*, Moore's Federal Practice § 41.40[9][b] (3d ed. 2021); *see also Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011) ("Because the dismissal of the present suit was without prejudice, res judicata (claim preclusion) will not bar a future suit based on identical grounds."); *Drake v. Chop Hosp. LLC*, 2021 WL 1088276, at *8 (N.D. Ill. 2021) ("[D]ismissals without prejudice do not bar future suits."). Instead, a plaintiff can bring the suit again by filing a new complaint. *See Nelson v. Napolitano*, 657 F.3d 586, 588 (7th Cir. 2011).

"By contrast, a dismissal with prejudice, whether by judicial order or stipulation is final, appealable, and unless the court has made some other provision, is subject to the general rules of preclusion – res judicata and collateral estoppel – and is effective not only on the immediate parties to the action but also on their privies." *See* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2367 (4th ed. 2021). A dismissal with prejudice means that the case is over for good, and a plaintiff cannot bring it back. *See, e.g.*, *United States v. Outboard Marine Corp.*, 104 F.R.D. 405 (N.D. Ill. 1984), *aff'd*, 789 F.2d 497 (7th Cir. 1986).

The big difference is finality. A dismissal without prejudice means that the parties return to square one, as if the litigation hadn't happened. So the door to future litigation is open. But a dismissal with prejudice means that the court resolved the case in a manner that affects the parties' rights. So the door to future litigation is closed.

The question here is whether Judge St. Eve left the door open.

I.      **Issue Preclusion**

Before addressing Rule 60, there is a threshold issue.  CFL Technologies (again, the patent owner and intervenor) contends that issue preclusion requires this Court to deny Defendants' motion.  *See* CFL's Resp., at 1 (Dckt. No. 85).

Issue preclusion (sometimes called collateral estoppel) "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment."  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

"The preclusive effect of a federal-court judgment is determined by federal common law."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  The party invoking preclusion must show that:  "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action."  *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citing *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011)); *see also In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019).

CFL argues that issue preclusion applies because the federal court in Delaware in *Osram III* interpreted Judge St. Eve's 2005 dismissal order and found that the order was without prejudice.  *See* CFL's Resp., at 2 (Dckt. No. 85).  "The issue has been decided," this Court is told.  *Id.*

Not so much.  CFL's argument suffers from a number of problems.

For starters, the doctrine of issue preclusion is a poor fit when the subject is the meaning of a court order. A court is in charge of its own orders. That authority necessarily includes the *meaning* of its own orders. A court cannot give a binding interpretation of the meaning of another court's orders (putting aside an appeal), and take away the issuing court's power to clarify what it meant. That is, another district court cannot deprive this Court of the power to interpret this Court's orders (and vice versa).

So, this Court is not bound by the interpretation of the September 27, 2005 order by another court. And another court cannot take away this Court's power to change its orders under Rule 60, either.

The argument also fails for other basic reasons. The court in *Osram III* did not purport to give a definitive interpretation of the meaning of Judge St. Eve's order. It is not as if the Delaware court declared that Judge St. Eve dismissed the case *with* prejudice, or (on the flipside) declared that Judge St. Eve did so *without* prejudice. Instead, the Delaware court viewed it as an open issue. The court in *Osram III denied* Osram's motion for summary judgment about the '140 and '464 patents, concluding that "Osram [had] not met its burden of proof that the '140 and '464 patents were subject to a dismissal with prejudice." *See CFL Techs.*, 2021 WL 1105335, at *8.

So, Osram asked the Delaware court for a ruling that the dismissal was with prejudice, and the Delaware court declined to make that ruling, one way or the other. The court simply ruled that, on the record at hand, it could not definitively rule that the dismissal was *with* prejudice. But that doesn't mean that the Delaware court ruled that the dismissal was *without* prejudice. A denial of a motion for summary judgment does not mean that the district court has therefore adopted the non-movant's version of what took place.

Denying a party's motion for summary judgment doesn't mean the other party wins. It does not mean that the court has signed onto the non-movant's version of reality. The fact that one side does not score a knock-out at summary judgment does not mean that the other side has won the point and won the round.

Basically, the Delaware court was asked to rule that Judge St. Eve ruled "X, not Y." The Delaware court declined, and did not pick between them. That does not mean that the Delaware court ruled that Judge St. Eve ruled "Y, not X."

And even then, the decision in question is an order from the Delaware court denying a motion for summary judgment. It is not a final judgment. So CFL cannot show that "the issue was previously determined by a 'valid and final judgment.'" *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013) (quoting *Bobby v. Bies*, 556 U.S. 825, 834 (2009)).

A denial of summary judgment is an interlocutory order. *See Sanzone v. Gray*, 884 F.3d 736, 739 (7th Cir. 2018). As a result, a denial of summary judgment has no preclusive effect. *See Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("The denial of summary judgment is not a final judgment; rather, it is an interlocutory order. Thus, the denial of summary judgment has no res judicata effect . . . .") (citations omitted).

CFL acknowledges that the order in question is not a final judgment. But CFL argues that a summary judgment ruling can have preclusive effect if it is sufficiently firm. *See* CFL's Resp., at 2 (Dckt. No. 85). CFL offers a few cases, but they don't move the needle. *Id.* at 2–3 (Dckt. No. 85) (citing *Crockwell v. Dart*, 2016 WL 4493456, at *5–6 (N.D. Ill. 2016); *Tate v. Showboat Marina Casino P'ship*, 250 F. Supp. 2d 958, 960 (N.D. Ill. 2003)). In each case, the final order in question was a partial summary judgment order that *granted* summary judgment on

15

the issues seeking to be precluded.  *See Crockwell*, 2016 WL 4493456, at \*5–6; *Tate*, 250 F.

Supp. 2d at 959–61.  So those courts resolved the merits of the issue in a definitive way.

That's not the case here, because the Delaware courts did not decide – one way or the

other – whether the ruling by Judge St. Eve was with or without prejudice.

## II.    Rule 60

Defendants ask this Court to modify the 2005 dismissal order under Rule 60(a) or Rule

60(b)(6), to confirm that the dismissal was with prejudice.  *See* Defs.' Mem., at 9 (Dckt. No. 78).

Again, the dismissal order in question is a minute order stating as follows:  "Pursuant to letter

received 9/20/2005, case is dismissed.  This Court shall retain jurisdiction.  Status hearing set for

11/2/2005 is stricken."  *See* 9/27/2005 Order (Dckt. No. 49).

Defendants seek two modifications.  First, Defendants want confirmation that the

dismissal was with prejudice.  Second, Defendants believe that the dismissal with prejudice

covered all claims about all patents that were ever in the case, not simply the claims that were

pending when Judge St. Eve issued the order on September 27, 2005.

The order itself did not expressly address whether the dismissal was with prejudice.  But

silence does not mean that the parties are lost at sea about what it means.  District courts issue

orders against the backdrop of the Federal Rules of Civil Procedure, which often set default rules

that fill in the gaps.

And here, the Federal Rules include a default rule about dismissals.  "Unless the order

states otherwise, a dismissal under this paragraph (2) is without prejudice."  *See* Fed. R. Civ. P.

41(a)(2).  Paragraph (2) refers to a dismissal "at the plaintiff's request . . . by court order."  *Id.*

The same default rule applies to a stipulation of dismissal.  *See* Fed. R. Civ. P. 41(a)(1)(B)

("Unless the notice or stipulation states otherwise, the dismissal is without prejudice.").  But the opposite default rule applies to a dismissal for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

That default rule sheds light on the meaning of the dismissal order here.  Judge St. Eve's dismissal order did not "state[] otherwise," so the dismissal was "without prejudice."  *See* Fed. R. Civ. P. 41(a)(2).

Challenging that result is an uphill battle.  Osram makes two arguments.  First, Osram seeks relief under Rule 60(a), which is reserved for correcting ministerial mistakes.  Second, Osram asks for relief under the catch-all provision of Rule 60(b)(6), which sweeps in "any other reason that justifies relief."  *See* Fed. R. Civ. P. 60(b)(6).

Each route is tough sledding, and Osram never gets there.

## A.    Rule 60(a)

Defendants begin with a rule that enables judges to correct their clerical mistakes and similar foul-ups.

Rule 60(a) allows a district court to "correct a clerical mistake or mistake arising from oversight or omission" in a judgment, order, or other part of the record.  *See* Fed. R. Civ. P. 60(a).  A court can correct a mistake "on motion or on its own, with or without notice" at any time.  *Id.*; *see also Klingman v. Levinson*, 877 F.2d 1357, 1360 (7th Cir. 1989); *TDK Elecs. Corp. v. Draiman*, 321 F.3d 677, 679–80 (7th Cir. 2003).

Rule 60(a) is not a tool to erase and replace all errors.  The rule applies when the text of the order does not reflect what the judge intended to do.  "If the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction; if the judgment captures the original meaning but is infected by error, then the parties must seek another means of authority to correct the mistake."  *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir. 1986);

17

*see also Klingman*, 877 F.2d at 1360 (citing *Panama Processes, S.A. v. Cities Serv. Co.*, 789 F.2d 991, 994–95 (2d Cir. 1986); *Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224, 226 (10th Cir. 1980)).

Rule 60(a) allows judges to correct themselves when they didn't say what they meant. It applies when they wrote one thing, but meant something else. Examples include a typographical error that awards the wrong amount of damages, or an order that switches the names of the parties (*e.g.*, saying that the Court entered summary judgment to the plaintiff, when the accompanying opinion stated that the defendant had prevailed). Rule 60(a) is geared toward blunders, typos, mess-ups, goofs, and comparable clerical mistakes.

In other words, Rule 60(a) applies "when the record indicates that the court intended to do one thing, but by virtue of a clerical mistake or oversight, did another." *See* 12 James Wm. Moore *et al.*, Moore's Federal Practice § 60.11[1][a] (3d ed. 2021). But a court cannot use Rule 60(a) to correct a judgment or order to "reflect anything other than the court's intent, as evidenced by the record, at the time the original judgment or order was entered." *Id.* at § 60.11[1][c].

The text of Rule 60(a) sweeps broadly, covering any "judgment, order, or other part of the record." *See* Fed. R. Civ. P. 60(a). Rule 60(a) can come into play when the issue is dismissal without prejudice. That is, if the order said that the dismissal was with prejudice, and the judge intended a dismissal without prejudice, Rule 60(a) allows the judge to correct it. And vice vera. *See LeBeau v. Taco Bell, Inc.*, 892 F.2d 605, 608 (7th Cir. 1989) ("If the plaintiff thought that Judge Duff had intended to dismiss without prejudice, but that the minute order failed to reflect this, she should have sought modification of the order under Rule 60(a), which allows for orders to be conformed to the original intent of the judge who entered them."); *Brummerstedt v. Am.*

18

*Airlines, Inc.*, 1994 WL 53087, at *2 (N.D. Ill. 1994); *Rhodes v. Hartford Fire Ins. Co.*, 548 F.

App'x 857, 860 (4th Cir. 2013); *Rivera v. PNS Stores Inc.*, 647 F.3d 188, 194 (5th Cir. 2011)

("Inadvertently designating a dismissal as being 'without prejudice' instead of 'with prejudice' is

the type of rote, typographical error of transcription that could be committed by a law clerk or a

judicial assistant."); *In re Jee*, 799 F.2d 532, 535 (9th Cir. 1986).

By the same token, courts can use Rule 60(a) to correct a mistake about whether the order

applies to some or all claims. *See, e.g.*, *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444–45 (9th

Cir. 1990) (using Rule 60(a) to clarify that an order applied to any and all trade and service

marks implicated in the claim).

A court's intent is determined "by reviewing any other relevant documents that were

produced contemporaneously with the judgment, such as a memorandum opinion or order,

findings of fact and conclusions of law, the transcript of a hearing, or a signed stipulation of the

parties." *See Rivera*, 647 F.3d at 196; *see also Klingman*, 877 F.2d at 1361 ("In deciding

whether the bankruptcy judge intended to hold the entire state judgment debt with interest

thereon nondischargeable, we look for evidence of his contemporaneous intent to do so, as

shown in the record.").

### 1. Dismissal With Prejudice

Defendants first argue that the Court should modify the 16-year-old minute order to

reflect that the dismissal was with prejudice. *See* Defs.' Mem., at 11 (Dckt. No. 78).

Based on the record, this Court sees no basis to conclude that Judge St. Eve made a

"clerical mistake," or made "mistake" by "oversight or omission." *See* Fed. R. Civ. P 60(a). If

anything, the record flows heavily in the other direction.

The case had a history of voluntary dismissals without prejudice. During the hearing on April 14, 2004, Plaintiffs' counsel announced to Judge St. Eve that Plaintiffs intended to voluntarily dismiss all claims. *See* 4/14/2004 Tr., at 3:1-4 (Dckt. No. 79-5). A voluntary dismissal is without prejudice, unless notice says otherwise. *See* Fed. R. Civ. P. 41(a)(1)(B). But Judge St. Eve made explicit what was implicit. Judge St. Eve asked: "Without prejudice?" *See* 4/14/2004 Tr., at 3:5. Counsel agreed. "Without prejudice, correct." *Id.* at 3:6.

Judge St. Eve reinstated the case in July 2005, when settlement talks fell apart. *See* 7/21/2005 Order (Dckt. No. 43). Two months later, Plaintiffs' counsel wrote the Court a letter, announcing that they were voluntary dismissing all claims about the last remaining patent. "This is to advise Your Honor that Nilssen is withdrawing his assertions that Osram infringes the sole patent remaining in issue in this matter, namely, U.S. Patent No. 5,049,787 (the ''787 patent')." *See* 9/20/2005 Letter (Dckt. No. 79-8). So Judge St. Eve closed the case. *See* 9/27/2005 Order (Dckt. No. 49).

No one asked Judge St. Eve to dismiss the claims with prejudice. Nothing in the letter from Plaintiffs' counsel on September 20 suggested that the dismissal was with prejudice. Defendants, for their part, did not oppose the dismissal, and did not file anything saying that the dismissal should be with prejudice. None of the communications to the Court suggested that anyone contemplated a dismissal with prejudice.

Against that backdrop, there is no reason to think that Judge St. Eve made a mistake in the dismissal order. There was a history of dismissals without prejudice. No one asked the Court to dismiss the claims with prejudice. And Rule 41 lurked in the background, providing a default rule for interpreting a dismissal order. Viewed as whole, there is no reason to doubt – and there is every reason to believe – that the dismissal was without prejudice.

20

Defendants make an argument about what Judge St. Eve intended, based on documents that Judge St. Eve never saw. On September 30, 2005, *after* the case was dismissed, Plaintiffs' counsel faxed a letter to defense counsel. The letter attached a draft of joint motion for voluntary dismissal and a draft order dismissing the case. In the letter, Plaintiffs' counsel stated that, "[w]ith respect to the *Osram II* case, the Court has asked us to file dismissal papers, and we would like to present the Court with a stipulated voluntary dismissal with prejudice of all claims and counterclaims pursuant to Rule 41(a)(1)(ii)." *See* 9/30/2005 Letter, at 3 (Dckt. No. 79-10). The draft motion, and the draft order, contemplated a voluntary dismissal "with prejudice." *Id.* at 11–12.

But those documents never saw the light of day. The parties didn't file the motion, or the draft order, or the letter. Judge St. Eve never saw a motion requesting a dismissal with prejudice. A tree that falls in the forest might make a sound, even if no one heard it. But documents don't shed much light on the intent of a judge if the judge never saw them.

Defendants had tools at their disposal if they wanted to ensure that the dismissal was with prejudice. Defendants could have opposed the dismissal unless it was with prejudice. Or, Defendants could have followed up with Plaintiffs' counsel, and made sure that the parties filed the joint motion and the draft order about a dismissal with prejudice. Instead, they did nothing. Defendants failed to take action at the time, so Defendants aren't in a good position to request help now. Heaven helps those who help themselves, and so does the judiciary.

Only a sliver in the record supports the notion that the dismissal might have been with prejudice. Defendants point to Judge St. Eve's order awarding costs, which noted that the dismissal was "with prejudice." *See* 3/2/2006 Order, at 1 (Dckt. No. 72) ("On September 27,

2005, the Court dismissed with prejudice the case Plaintiffs Ole K. Nilssen and Geo Foundation
. . . brought against Defendants . . . .").

That's something, but it's not much. For starters, that order came nearly six months after
Judge St. Eve dismissed the case. Under Rule 60(a), the question is what a district court
intended at the time of entering an order. *See Klingman*, 877 F.2d at 1361; *Rivera*, 647 F.3d at
196. An order entered six months later might shed a little light, but it comes late in the game. It
wasn't a contemporaneous order.

And even then, when they moved for attorneys' fees and costs, Defendants did not put
much emphasis on the notion that the dismissal was with prejudice. In their 25-page brief
supporting the motion for costs (in 2005), Defendants included only two sentences about that
subject, putting their spin on the letter from Plaintiffs' counsel to the Court on September 20,
2005. *See* Defs.' Mem., at 12 (Dckt. 52-2) ("At the close of business the next day – September
20, 2005 – Nilssen's counsel sent this Court a letter stating that he intended to dismiss this entire
action with prejudice."); *see also id.* at 14 n.12. Those sentences don't get them very far,
because the letter to the Court dated September 20, 2005 said no such thing.

It made little or no difference to the merits of the motions whether the dismissal was with
or without prejudice. Judge St. Eve awarded costs, but a district court can award costs for a
dismissal without prejudice. *See Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir. 1996);
*see also Bonds v. Fizer*, 69 F. Supp. 3d 799, 807 (N.D. Ill. 2014); *First Commodity Traders, Inc.
v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) ("Where there is a dismissal
of an action, even where such dismissal is voluntary and without prejudice, the defendant is the
prevailing party.") (quoting 6 James Wm. Moore *et al.*, Moore's Federal Practice § 54.70[4] (2d
ed. 1985)); *Gwin v. Am. River Transp. Co.*, 482 F.3d 969, 975 (7th Cir. 2007).

There are two possible scenarios. The first scenario is that Judge St. Eve intended to dismiss the claims without prejudice, but made a ministerial mistake six months later when awarding costs by referring to a dismissal "with prejudice." The second scenario is that Judge St. Eve intended to dismiss the claims with prejudice, even though no one asked the Court to do so, and even though the Court said nothing at the time about a dismissal with prejudice.

This Court concludes that the first scenario is far more likely. A passing reference in a short order about costs is not enough to overcome all of the headwinds, including a history of dismissals without prejudice, a lack of a request for a dismissal with prejudice, and a default rule for dismissals without prejudice under the Federal Rules. Defense counsel gave the Court bad information in their 2005 motion for costs when they characterized the September 20, 2005 letter as requesting dismissal with prejudice. So in all likelihood, the Court simply repeated that bad information.

### 2. The Dismissal of Other Patents

Defendants' next argument is no better. Defendants ask this Court to modify the dismissal order dated September 27, 2005 to confirm that it applied to all claims about *all* patents that were ever in the case. *See* Defs.' Mem., at 11–14 (Dckt. No. 78). In their view, the dismissal covered claims about all *16* patents, even though only *1* of the 16 patents remained in the case at the time of the dismissal order. *Id.*

Once again, Defendants rely on the letter that counsel exchanged a few days after Judge St. Eve entered the dismissal order on September 27, as well as the draft motion and the draft order. *See* Defs.' Mem., at 11–14 (Dckt. No. 78). But the Court never saw them, so they shed no light on the Court's intent. The intent of the Court, not the intent of the lawyers, is what matters when evaluating an order under Rule 60(a).

The argument suffers from other problems, too. A dismissal order covers claims that are then-pending in the case, unless a district court says otherwise. District courts typically do not re-dismiss claims that already left the case. So, when Judge St. Eve dismissed the case on September 27, 2005, the Court dismissed the claims that were in the case at that point in time. There was no need for Judge St. Eve to dismiss claims that were already dismissed.

The Court dismissed the other claims almost a year and a half earlier. Specifically, Judge St. Eve dismissed all claims – meaning everything in the case – on April 15, 2004. *See* 4/15/2004 Order (Dckt. No. 28). The Court did so after hearing a representation from Plaintiffs' counsel that the dismissal was "without prejudice." *See* 4/14/2004 Tr., at 3:1-22 (Dckt. No. 79-5). When the Court reinstated the case in July 2005, the only patent at issue was the '787 patent. *See* Osram's Proposed Claim Construction Chart, at 2 (Dckt. No. 44); Nilssen's Proposed Claim Construction Chart, at 2 (Dckt. No. 45). Claims about all of the other patents were dismissed in April 2004, and never sprang back to life.

Defendants point to language in that original dismissal order from April 2004, giving Plaintiffs leave to reinstate. The minute order dated April 15, 2004 stated: "Plaintiffs' oral motion for voluntary dismissal with leave to reinstate by 6/25/04 is granted. Terminating case." *See* 4/15/2004 Order (Dckt. No. 28). Defendants attempt to press into service the language about leave to reinstate. As they see it, Judge St. Eve gave Plaintiffs leave to reinstate by June 25, 2004, and later extended the deadline. *See* Defs.' Mem., at 11–12 (Dckt. No. 78). In their view, when the window of opportunity finally closed (on July 22, 2005), the dismissal without prejudice underwent a metamorphosis and transformed into a dismissal with prejudice.[1]

---

[1] As support, Defendants offer a quote from the Seventh Circuit's opinion in *Otis v. City of Chicago*, 29 F.3d 1159, 1164 (7th Cir. 1994). But in the passage in question, the Seventh Circuit summarized the approach in "[o]ne series of cases." *Id.* In the preceding sentence, the Seventh Circuit noted that it has developed "two lines of cases, which are hard to reconcile." *Id.* This Court does not read *Otis* to stand

That gloss suffers from two problems. First, Judge St. Eve said no such thing. And again, Rule 41 contemplates an express statement that a dismissal is with prejudice. *See* Fed. R. Civ. P. 41(a)(2). If there is no such statement, then there is no dismissal with prejudice. *Id.*

Second, giving a plaintiff leave to reinstate is not the same thing as setting a deadline when a dismissal without prejudice will become a dismissal with prejudice. It simply means that a plaintiff can bring a case back to life by that deadline. And if a plaintiff doesn't meet the deadline – but wants to raise the issue again – then the plaintiff must file a new case and pay a new filing fee. *See Boros Plumbing, Inc. v. Plumber's Pension Fund*, 2010 WL 2574222, at *2 (N.D. Ill. 2010) ("A dismissal without prejudice with leave to reinstate allows a party to resurrect his lawsuit without filing a new complaint and paying a filing fee."); *United States v. Ligas*, 549 F.3d 497, 502 n.2 (7th Cir. 2008) ("There is a difference between dismissing a suit without prejudice and dismissing a suit with leave to reinstate; after a dismissal without prejudice, the plaintiff can resurrect his lawsuit only by filing a new complaint.").

Leave to reinstate simply means that a party can return to the courthouse in the same case. The party can reenter the courtroom without paying a new entrance fee. It does not mean that, if the party *doesn't* come back, that party left the courthouse with prejudice.

Sometimes district courts will dismiss a case without prejudice, and grant leave to reinstate the case by a deadline, *and* expressly rule that the dismissal will convert to a dismissal *with* prejudice if the plaintiff does not come back by the deadline. *See, e.g.*, *Shapo v. Engle*, 463 F.3d 641, 642 (7th Cir. 2006) (noting the district court's order that "this case is hereby dismissed

---

for the proposition that a dismissal without prejudice with leave to reinstate by a deadline automatically converts to a dismissal with prejudice when the deadline has passed. If anything, the Seventh Circuit posed, but did not purport to answer, the following question: "Does either side need to obtain an additional order from the district judge, or does the dismissal convert to one 'with prejudice' once the time to fulfil the condition has expired?" *Id.* at 1163.

without prejudice, with leave to reinstate by or on 6/7/04 at which time the dismissal will be with prejudice"); *Kitchen v. Burge*, 2013 WL 9861056, at *1 (N.D. Ill. 2013) (dismissing defendants "without prejudice from the above-captioned action in accordance with the terms of the Release and Settlement Agreement, and with leave to reinstate on or before November 1, 2013. If no motion to reinstate is filed on or before November 1, 2013, the dismissals set forth above shall convert to dismissals with prejudice"); *see also Rodriguez v. Quinn*, 107 F.3d 873 (7th Cir. 1997) ("[T]he district court dismissed the suit for want of prosecution, with permission to reinstate within the ten days allowed by Fed. R. Civ. P. 59. When Rodriguez failed to respond, the court dismissed the case with prejudice on May 12, 1995.").[2] But the order in question said no such thing.

And in any event, Defendants cannot get any mileage from the April 2004 dismissal for another compelling reason. In the Delaware case, the parties are litigating the '140 and '464 patents. That's the genesis of the motion before this Court. But when Judge St. Eve issued the (first) dismissal order in April 2004, those two patents were already out of the case.

Specifically, in November 2003, the parties' joint claim construction chart reduced the number of patents at issue from 16 to 2 – dropping both the '140 and '464 patents. *See* Parties'

---

[2] A dismissal without prejudice with leave to reinstate by a certain deadline is a final order within the meaning of Rule 58 at the end of the deadline. *See Otis v. City of Chicago*, 29 F.3d 1159, 1161 (7th Cir. 1994) ("We set this case for hearing en banc to decide whether an order dismissing the suit, but allowing the litigant an option of reinstatement, becomes a 'final decision,' and therefore may be appealed under 28 U.S.C. § 1291, once the time to use the option has expired. Our answer is 'yes.'"); *Wilson v. Schoep's Ice Cream Co.*, 116 F.3d 1483, at *1 n.3 (7th Cir. 1997) ("Because the district court dismissed Wilson's suit conditionally, the judgment becomes final after the time to reinstate has expired."); *Dolis v. Chambers*, 454 F.3d 721, 723 (7th Cir. 2006) (citing *Otis* for the proposition that "judgment became final for purposes of appeal after time to reinstate complaint expired"); *see also Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) ("The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground such as failure to exhaust administrative remedies when exhaustion is not a jurisdictional requirement. The test is whether the district court has finished with the case.").

Joint Claim Construction Chart (Dckt. No. 20); *see also* 3/2/2006 Order, at 1 (Dckt. No. 71). "[A] patentee's announcement that it [is] no longer pursuing particular claims" – excluding them from a claim construction chart – "coupled with its ceasing to litigate them [is] sufficient to remove those claims from the case even without such formalities." *Alcon Rsch. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014); *see also SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012). Such a withdrawal is treated as either a Rule 15 amendment to the complaint or a "Rule 41(a) voluntary dismissal of the claims without prejudice." *See SanDisk Corp.*, 695 F.3d at 1353 (citing *Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987); *Nilssen v. Motorola, Inc.*, 203 F.3d 782, 784 (Fed. Cir. 2000)).

So the '140 and '464 patents were out of the case in November 2003, before Judge St. Eve issued the first dismissal order in April 2004, and before Judge St. Eve issued the second dismissal order in September 2005. The Court never said anything about dismissing the '140 and '464 patents with prejudice.

In a similar vein, Defendants point to statements made by counsel to the federal court in Delaware in *Osram III* about whether the dismissal in *Osram II* was with or without prejudice. *See* Defs.' Mem., at 13 (Dckt. No. 78). Again, the only thing that matters is what Judge St. Eve intended when the Court dismissed the claims way back when. Admissions by lawyers in 2021 have no bearing on what Judge St. Eve intended in 2005.

### B. Rule 60(b)(6)

As a fallback, Defendants argue that this Court should modify the dismissal order under the catch-all provision of Rule 60(b)(6). *See* Defs.' Mem., at 14 (Dckt. No. 78). Rule 60(b)(6) creates a limited window of opportunity for changes. And here, Defendants seek a change that is too big, and too late.

Rule 60(b)(6) allows a party to seek relief from a judgment or order under a limited set of circumstances like fraud, mistake, inadvertence, or excusable neglect. *See* Fed. R. Civ. P. 60(b); *see also Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005); *Shuffle Tech. Int'l, LLC v. Wolff Gaming, Inc.*, 757 F.3d 708, 709 (7th Cir. 2014). "Rule 60(b)(6), as a residual catchall, applies only if the other specifically enumerated rules do not." *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018). Although the Court has "wide discretion" under Rule 60(b)(6), relief "is available only in extraordinary circumstances . . . . " *Id.* (quoting *Buck v. Davis*, 137 S. Ct. 759, 764 (2017)).

There is a time limit, too. A party must seek relief under Rule 60(b) within a "reasonable time." *See* Fed. R. Civ. P. 60(c)(1). "[W]hat constitutes 'reasonable time' for a filing under Rule 60(b) depends on the facts of each case. Although '[t]here is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion,' [the Court] look[s] at 'the interest in finality, the reasons for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice, if any, to other parties.'" *Ingram v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950, 952 (7th Cir. 2004) (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986)).

This case does not come close to meeting the high standards of Rule 60(b)(6). "In the typical 'extraordinary' case . . . there just is no way the party seeking to set aside the judgment could have discovered the ground for doing so within a year of its entry." *Lowe v. McGraw-Hill Co., Inc.*, 361 F.3d 335, 342 (7th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993); *Claremont Flock Corp. v. Alm*, 281 F.3d 297, 299–300 (1st Cir. 2002); 12 James Wm. Moore *et al.*, Moore's Federal Practice § 60.48[3][b], [c] (3d ed. 2003)).

Here, the opposite took place. Defendants were well aware of the content of Judge St. Eve's dismissal order in September 2005. They could see for themselves that the order said nothing about a dismissal with prejudice. And they knew how to fix it, too. In fact, within a few days, Defendants received a letter from Plaintiffs' counsel with a draft motion and a draft order, all of which contemplated a dismissal with prejudice.

Defendants had the benefit of highly sophisticated counsel, who were well equipped to seek a dismissal with prejudice, if that's what the parties and the Court intended. Defendants, too, had an incentive to seek a dismissal with prejudice, if that's what everyone had in mind. And if the dismissal was supposed to cover claims about every patent ever mentioned in the case (even previously-dismissed claims), Defendants had every opportunity to nail that down. If everyone intended a dismissal with prejudice on everything, someone would have said so, and Defendants would have asked for it.

But Defendants did nothing. For whatever reason, Defendants did not ask the Court for a dismissal with prejudice in 2005, even though a dismissal with prejudice was on the table. That was their choice. Sixteen years is an extraordinary amount of time to wait before seeking judicial relief. But after waiting 5,809 days, there is no reason – let alone an *extraordinary* reason – to change anything at this late stage.

### Conclusion

For the foregoing reasons, Defendants' motion to modify the dismissal order is hereby denied.

Date:   February 22, 2022

_____

Steven C. Seeger
United States District Judge

29